393 A.2d 761

**William T. LAURSEN, Appellant,**

v.

**GENERAL HOSPITAL OF MONROE COUNTY and Elmo J. Lilli and Ramon B. Molina.**

Superior Court of Pennsylvania.

Argued March 23, 1978.

Decided Oct. 20, 1978.

Martin S. Rothman, New York City, for appellant.

L. M. Ludwig, Scranton, with him H. J. McMenamin, Scranton, for appellee, General Hospital of Monroe County.

Rudolph Zieger, Jr., Allentown, for appellees, Lilli and Molina.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

VAN der VOORT, Judge:

This is an appeal from the refusal of the court below either to lift a compulsory non-suit or to permit appellant to amend his Complaint. The litigation involves a claim of medical malpractice against Drs. Elmo J. Lilli and Ramon B. Molina and General Hospital of Monroe County (hereinafter, Monroe General Hospital), appellees herein.

The background facts out of which this dispute arose are as follows: Between 1964 and March, 1970, the appellant was treated from time to time for a variety of disabilities by Dr. Elmo J. Lilli or his medical partner, Dr. Ramon B. Molina. On several occasions this involved hospitalization at Monroe General Hospital.

Appellant's first professional contact with Dr. Lilli was in 1964 when he called on the doctor for a general checkup. At that time appellant was 55 years of age and Dr. Lilli found him to be suffering from atrial fibrillation (irregular heartbeat) and mild hypertension. Appellant informed Dr. Lilli at that time that he had suffered from the irregular heartbeat for several years but had not been hospitalized. From this initial visit until the end of 1967, appellant continued to see one or the other of the appellee doctors on almost a monthly basis. In December, 1967, appellant had a non-functioning gallbladder removed.

Appellant visited Dr. Lilli on five occasions in 1968 and was treated for high blood pressure, irregular heartbeat and several upper respiratory infections. In January, 1969, ap-

pellant developed diabetes. In May and June of that year he was treated for pneumonia and bronchitis.

On September 28, 1969, appellant was admitted to Monroe General Hospital and was diagnosed by Dr. Lilli as having an arteriosclerotic heart disease and angina pectoris, or more simply stated, coronary insufficiency and angina, in addition to his diabetes. During this hospitalization he was treated with numerous drugs for his several ailments, including Demerol, Isodil, Digitalis, Liserdal, Nitroglycerin, Phenobarbital, Peri-Colace, Seconal, Phenergan and Orinase. The last mentioned drug was given to control appellant's diabetic condition. Testing of the appellant indicated no damage to the heart at that time. Appellant was discharged from the hospital in October of 1969 but continued on drug medication consisting of Digitalis, Peritrate, Nitroglycerin and Orinase.

Appellant visited Dr. Lilli on October 20, 1969, at which time the Orinase was discontinued and the other medication continued with the exception of Peritrate for which Isodil, a similar drug, was substituted. Appellant visited Dr. Lilli on November 3 and December 8, 1969, and January 5, 1970, but there were no new developments and the same medication was continued.

On January 21, 1970, appellant again visited Dr. Lilli, this time complaining of chest pain radiating to his arms. The pain was not associated with sweating or weakness and although results of an EKG evidenced continued coronary insufficiency there was no sign of a heart attack.

On January 25 the appellant was hospitalized and was again examined and treated by both Drs. Lilli and Molina. On this occasion, in addition to his coronary insufficiency, he was found to have suffered myocardial infarction or, in less technical terms, a heart attack. During this hospitalization, in addition to appellant's continued medication for his coronary insufficiency, he was for the first time treated for his myocardial infarction with a drug known as Coumadin, a blood thinner given to reduce the chance of thrombosis in coronary arteries. Appellant was discharged from this hos-

pitalization on February 7, 1970, and his medication continued with the prescription of Digitalis for his coronary insufficiency along with Coumadin for his myocardial infarction.

Appellant was next seen by Dr. Lilli on February 23, and reported that he continued to experience sharp non-radiating chest pains. His medication of Digitalis and Coumadin were continued.

Appellant was once again admitted to Monroe General Hospital on March 17 after experiencing severe chest pain. Upon his in-hospital examination by Dr. Lilli, he was found to be partially paralyzed, having lost the feeling and ability for movement in his lower extremities as a result of what was diagnosed as a spinal cord lesion. Shortly thereafter appellant was removed from Monroe General Hospital for further treatment at Allentown General Hospital. His professional contact with Drs. Lilli and Molina and the Monroe General Hospital terminated on February 20, 1971.

On July 27, 1971, appellant brought suit against the doctors and the hospital. In his complaint he singled out his medical and hospital treatment of September 28, 1969, as the gravamen of his complaint. Paragraph 13 of the complaint reads as follows:

"13. On or about September 28, 1969, and while plaintiff was under the care of defendant Elmo J. Lilli and defendant Ramon B. Molina, and while plaintiff was being treated in the facility of General Hospital of Monroe County, plaintiff suffered severe injuries and damage *as will be hereinafter more fully set forth.*" (italics added)

There follows in paragraphs 15 and 16 some twelve acts of negligence attributed to the doctors and in paragraph 17 six categories of negligence attributed to the hospital. In paragraph 19 these acts of the doctors and the hospital are claimed to have caused the paralysis which the appellant suffered in March, 1970. In context, these paragraphs are all in amplification of paragraph 13 and relate to treatments while hospitalized on or about September 28, 1969. This time period is further emphasized in paragraphs 5 and 6 of the complaint which identify Drs. Lilli and Molina as the

doctors who treated him "on September 28, 1969, and for sometime prior thereto".

The complaint was filed July 27, 1971, but the case was not reached for trial until January, 1977, nearly six years later. On November 9, 1971, interrogatories addressed to the appellant were filed on behalf of Drs. Lilli and Molina. The interrogatories were answered on October 2, 1972. The case was placed on the October 16, 1973, trial list but was postponed in order to permit the appellant to take the depositions of Drs. Lilli and Molina. The depositions began on October 25, 1973, and were completed September 9, 1976. During the course of the Lilli deposition, the doctor was directed by his counsel not to answer questions relating to the period subsequent to the September 28, 1969, hospitalization. Appellant petitioned the court for an order directing Drs. Lilli and Molina to answer questions relating to treatment subsequent to September 28. On August 8, 1974, the court entered such an order directing the appellees to answer questions with regard to periods subsequent to September 28, 1969, but expressly reserving judgment as to the admissibility of such testimony until the time of trial. The order states in part—

"This order shall not be construed as affecting admissibility of any facts so elicited at the time of trial and is restricted solely to the purpose of depositions. The admissibility at the time of trial will be affected by many things, among which are whether they would be relevant to the issue of damages and whether there is a direct connection between the acts occurring on or before September 28, 1969." (R. 193a)

The case was finally reached for trial on January 18, 1977. Following the selection of a jury, counsel for the parties, without objection, recessed to the court's chambers to confer on the ensuing trial. The verbatim transcript of this conference is included in the appellate record. Appellant's counsel stated that his first witness would be Dr. Lilli. In response to a request for an offer of proof, counsel for appellant indicated that his proof of negligence would consist of the contentions (1) that the administration of Coumadin be-

tween January 25 and March 17, 1970, had been a mistake which led to appellant's paralysis and (2) that there had been an improper diagnosis of appellant's condition at the time of his hospitalization on March 17. Pressed by the court as to whether proof would be offered of any causal connection between the September 28, 1969, hospitalization and treatment and either the heart attack of January, 1970, the use of Coumadin in response to the heart attack or the paralysis of March, 1970, appellant's counsel took the position that there was no connection and that none was required under a correct reading of the complaint. Counsel for appellant advised the court—

"MR. BERNEY: The September heart condition of Mr. Laursen did not cause the paralysis on March 17, 1970, but the administration of Coumadin for the heart condition in January of 1970 did cause the paralysis on March 17, 1970. That would be my proof. (R. 198a)

 . . . .

"MR. BERNEY: There is no allegation that anything that was done prior to December of '69 caused a heart condition in January of 1970. It was a heart condition that existed. There were no acts of negligence that caused it. It existed. The Coumadin is what caused the paralysis in March, 1970, the administration, and that was the administration in January of '70. (R. 199a)

 . . . .

"MR. BERNEY: It's [the January heart attack] independent of any negligence, but in other words, nevertheless, the condition, the heart, the alleged act of negligence occurred in January of 1970 when the patient was given Coumadin, and that administration and the failure to properly work him up and the continued doctor-patient relationship caused the bleeding, which caused the paralysis in March, 1970. (R. 199a)

"In addition my proof would show, the failure to diagnosis when he was in the General Hospital of Monroe County in March of '70, the bleeding at 2–4 caused him to bleed and caused the paralysis. (R. 199a–200a)

 . . . .

"MR. BERNEY: Judge Marsh, my offer of proof would be this that there are no acts of negligence prior to September of '69 which caused a heart condition in '70, and which caused the paralysis on March 17, 1970. However, the acts of negligence occurred at the time of administration of Coumadin in January of '70 based on a continuing treatment and the lack of diagnosis in March 17, 1970. (R. 200–201a)

. . . . .

"MR. BERNEY: Once again the Plaintiff's contention will be that the failure to properly treat this patient while he was on Coumadin and the administration of Coumadin and the presentation at the Defendant Hospital on March 17, 1970 and the failure to properly diagnose the condition he was suffering from on March 17, 1960, where the proximate causes of the paralysis sustained. (R. 201a–202a)

. . . . .

"MR. BERNEY: . . . as to acts of negligence which occurred after September 28, 1969, I have proof. Prior to and on September 28, 1969, I have no proof. That is my position." (R. 206a).

In the light of the repeated statements of appellant's counsel that there was no relationship between the hospitalization of September, 1969, and the heart attack in January of 1970 or the administration of Coumadin therefor, or the alleged mistaken diagnosis on March 17, the court stated:

". . . the court is making a ruling . . . that the complaint does not embrace acts occurring after September 28, 1969, and therefore I would not allow proof in." (R. 202a)

The court also denied permission to amend the complaint because the amendment desired would state a cause of action beyond the statute of limitations. The court explained its ruling in these words:

"I would say that the element of the law of Pennsylvania as to the statute of limitations allows at some point

the petitioner to amend, but this is not the area. That goes to generally when there has been a misstatement of a date or a misstatement of a name of a party, or something of that nature is where the element of surprise comes in, but here you have a totally different cause of action, therefore we would deny your request." (R. 204a)

The court then addressed counsel for the appellant as follows:

"At this point I think you may want to make a decision whether you feel you should proceed with the case or whether this is such a bad jeopardy to your case that you cannot proceed further out of fairness to your client." (R. 205a)

Counsel for appellant responded—

"Your Honor, if I am precluded from using any evidence with respect to negligence which occurred after September 28, 1969, to go forward would only jeopardize my clients. I would be forced to rest." (R. 205a–206a)

Appellant having rested his case without introducing any testimony, appellees moved for a non-suit which was granted. At the same time, the court granted a rule to show cause why the non-suit should not be lifted and, in due course, heard argument and refused to lift the non-suit.

Appellant now contends that he has been denied his day in court because the non-suit was inappropriate simply because appellant's proposed testimony was insufficient to sustain his cause of action: *Ruhe v. Kroger Company*, 425 Pa. 213, 215, 228 A.2d 750 (1967). It was the appellant who forced the non-suit by resting his case without offering any evidence. He elected in this manner to obtain an appellate review of the court's interpretation of the complaint without having to go to trial.

The trial court offered appellant the opportunity to present his case but he declined to do so in the face of the foreknowledge that the court would rule inadmissible testimony of the January-March treatments without connecting them with the prior September medication and hospitaliza-

tion. Had appellant elected to go to trial, he could have built his record by making offers of proof when testimony was ruled inadmissible. Appellant had already taken extensive depositions of Drs. Lilli and Molina and had satisfied himself that the Coumadin treatments which started in January had no relationship to the September treatments. Even now appellant does not claim that such a relationship exists; he stands on his interpretation of the complaint as alleging a single on-going course of treatments which started on or before September and continued through the following March.

We do not so read the complaint which is well drawn and in full compliance with the rules. As we read it, it avers quite unambiguously that the injury and damage complained of occurred "on or about September 28, 1969 . . *as will be hereinafter more fully set forth* " (paragraph 13). Succeeding paragraphs 15, 16 and 17 spell out twelve acts of negligence attributed to the doctors and eight to the hospital, leading to the end result that appellant was paralyzed by a spinal cord lesion which came about (paragraph 19) "wholly as a result of the negligence of the defendants as hereinbefore set forth"; namely, negligence during the treatments which occurred "on or about September 28, 1969 . . . as will hereinafter be more fully set forth" (paragraph 13). The complaint mentions no other date than September 28, 1969, although the professional relationship between appellant and Drs. Lilli and Molina began five years before that date and continued for a year and a half thereafter.

Under the trial court's ruling, evidence of the Coumadin treatment for the January heart attack would have been admitted had appellant offered to connect the heart attack for which Coumadin was administered with the September treatment. This follows well established Pennsylvania law: *Thompson v. Fox*, 326 Pa. 209, 212, 192 A. 107 (1937); *Restatement of Torts Second*, § 457. Appellant's counsel, as previously quoted, asserted over and over again that there was no such connection and he makes no claim now that one can be established. Indeed, he still contends that none is needed.

Appellants argument that the complaint should be construed as a charge of negligence over an on-going course of treatments starting on or before September 28, 1969, and continuing as long as the professional relationship existed has at least two weaknesses. The wording of the complaint contradicts such an interpretation. Furthermore, such a pleading would be quite impermissible under Rule 1019 which requires that averments be concise and summary and specific as to time, place and items of special damage. One need only see the impossible burden that would be cast upon the appellees if the complaint were read so that the appellant could locate the alleged negligence anywhere within the six year time frame over which treatments extended for numerous and unrelated ailments. Appellant was under treatment in September for coronary insufficiency, angina and diabetes. In January he was hospitalized for a heart attack which appellant concedes had no relationship to the earlier disabilities. Appellant's complaint, as we read it, is well drawn and in full compliance with the rules; but it would be quite defective if given the scope appellant now claims for it.

While Pennsylvania pleadings are no longer controlled by formalistic rules, it is still important that the complaint appraise a defendant of the nature and extent of the plaintiff's claim: *Standard Pennsylvania Practice, Revised Edition, Pleading,* Vol. 3, § 5. Pleadings serve the function of defining issues and giving notice to the opposing party of what the pleader intends to prove at trial so that the opposition may, in turn, prepare to meet such proof with its own evidence: *Kochinksy v. Independent Pier Co.,* 157 Pa.Super. 15, 41 A.2d 409 (1945).

Appellant sought to amend his complaint after the court had ruled that claims of subsequent negligence must be causally connected with the September 28 treatment. This motion was made approximately seven years after the administration of Coumadin, the alleged negligence, and was well beyond the two year statute of limitations for injury wrongfully done to the person, 12 P.S. § 34. For that reason the right to amend was denied. This accords with well

established Pennsylvania law: *Eastgate Enterprises, Inc. v. Bank and Trust Company of Old York Road,* 236 Pa.Super. 503, 508–09, 345 A.2d 279, 281 (1975).

 Appellant suggests that his interrogatory answers which were filed on October 2, 1972, adequately identified the Coumadin treatment as the basis of his claim and that these interrogatory answers should be treated as an unofficial amendment to the complaint. But even this date is not within two years "from the time when the injury was done", 12 P.S. § 34. Furthermore, we know of no basis for equating testimony with pleadings. Pleadings would simply disappear if testimony at variance with the pleadings became an amendment.

We see no justification for allowing an amendment to the complaint which would add a cause of action well beyond the statute of limitations. Neither do we see any purpose to be gained by ordering a new trial when we agree with the trial court that appellant's proof of negligence would have to be excluded because unrelated to the negligence identified by date in the complaint.

Order affirmed.

HOFFMAN and SPAETH, JJ., did not participate in the consideration or decision of this case.