## Isard v. Atkins

*Jerome J. Verlin*, for plaintiff.
*James Lewis Griffith*, for defendants.

ROSENWALD, *J.*, August 30, 1979—The instant action arises out of a claim by plaintiff, Murray G. Isard, against defendants, the administrators of the Estate of Joseph P. Atkins, M.D.,[1] for medical malpractice. The alleged malpractice of Dr. Atkins occurred during the course of his treatment of plaintiff for a strictured esophagus. Dr. Atkins performed three esophageal dilations on

---

1. The complaint originally filed against Joseph P. Atkins, M.D., was amended to substitute the said administrators in its caption on December 13, 1976, upon the suggestion to the court of Dr. Atkins' death. The Graduate Hospital of the University of Pennsylvania, an original defendant, was released from this action by stipulation of counsel.

plaintiff during the period from June 21, 1967, through September 11, 1967. The last esophageal dilation resulted in a perforation and related medical complications.

In its complaint in trespass filed on June 9, 1969, plaintiff's allegations against defendant doctor encompassed the following language:

"7. Defendant, Dr. Joseph P. Atkins, prior to, and at the time of admission to the Graduate Hospital of the University of Pennsylvania, assured the plaintiff that he could cure his esophageal stricture and alleviate the symptoms by dilating his esophagus.

. . .

10. The negligence of the defendant(s) herein consisted of the following:

(a) Using more force than was necessary during the gastroscopic procedure;

(b) Failing to pay attention to the expressions of pain of the plaintiff during the procedure;

(c) Failing to properly supervise the gastroscopic procedure;

(d) Failing to properly negotiate the dilation instrument into the plaintiff's esophagus;

(e) Expanding the dilation instrument beyond a proper limit within the plaintiff's esophagus;

(f) Attempting to dilate the plaintiff's esophagus at a faster rate than was necessary and proper under the circumstances;

(g) Failure to properly diagnose plaintiff's condition subsequent to the procedure;

(h) Failure to leave proper and administer postoperative orders following the procedure;

(i) Abandoning the patient after this procedure;

(j)  Failure to use the skill and care required of a specialized physician performing esophageal dilations in this community;

(k)  Failure to use the skill and care required of a hospital nurse performing esophageal dilations in this community;

(l)  Being otherwise negligent at law and in fact."

On May 12, 1971, the then counsel for plaintiff deposed Dr. Atkins. During the course of the said deposition, the doctor was requested to answer the following question: "Prior to the dilation on September 11, 1967 what conversations, if any, did you have with Mr. Isard to apprise him of what you were going to do, what you were hoping to accomplish, and what risks, if any, were entailed?" Counsel for defendant objected on the ground that such question dealt with the issue of informed consent, which issue had not been pleaded in the complaint. Upon plaintiff's motion, the Honorable Harry A. Takiff, judge of the court of common pleas, on September 10, 1973, overruled defendant's objection and ordered that the doctor answer the aforesaid question "or be precluded from entering a defense to plaintiff's claim." Defendant's answer, subsequently delivered in a second deposition dated November 19, 1973, disclosed facts from which plaintiff could reasonably have pieced together the elements of an action based upon the theory of informed consent. Specifically, the answer of Dr. Atkins revealed that he was unable to state with certainty that he had informed plaintiff of all of the substantial risks involved in the type of surgery to be performed, or, further, that he had even been aware of all such risks. Dr. Atkins is now deceased.

The case was assigned to this court for trial on April 30, 1979. Following a series of pretrial conferences wherein this court presided over efforts of counsel to negotiate a settlement, the case was listed for trial on June 18, 1979. On that day, after a jury had been empanelled, counsel representing both sides in this litigation raised the issue now before us of whether or not informed consent could be submitted to the jury during the course of the trial as a theory of liability separate and distinct from the general theory of negligence.[2] Ancillary to this issue is the question of whether plaintiff should be permitted to introduce into evidence at trial the aforesaid portions of the Atkins deposition either in support of the informed consent, or any other theory. In an effort to conserve the resources of all involved, and because of the crucial significance of the issue raised, this court suggested, and the parties agreed to, an arrangement whereby this court would rule on the issue prior to the commencement of trial, and certify any appeal to the Superior Court.

Pursuant to the aforesaid arrangement, both parties submitted legal memoranda. The contentions of defendants are that neither the complaint, nor any subsequent pleading by plaintiff, contained allegations relating to any failure by defendant, Dr.

2. Plaintiff actually contends, as a part of its argument, that the particular issue of informed consent involved in this action *does lie in negligence*. As it is clear, however, that plaintiff's ultimate objective is to have liability submitted to the jury in terms already determined by the courts of the Commonwealth to constitute a separate theory of liability, it would appear that plaintiff's argument is semantically circuitous. (See further discussion infra.)

Joseph P. Atkins (deceased), to secure plaintiff's informed consent, and that, therefore, plaintiff is barred from raising the issue at trial. Underlying defendant's contentions is the argument that informed consent being a separate basis of liability, any ruling permitting plaintiff to proceed upon the theory at this stage of the proceedings would require leave to the said plaintiff to amend his complaint long after the running of the applicable statute of limitations. Defendants contend that this would be legally impermissible and prejudicial to their rights.

Plaintiff, on the other hand, contends that it did, in its complaint, sufficiently plead allegations relating to the *particular issue of informed consent presented by the facts of this case.*[3] In particular, plaintiff points to paragraph 10(1) of its complaint wherein it included the "catchall" allegation against Dr. Atkins of "being otherwise negligent at law and in fact." Implicit in *its* contention, plaintiff urges this court to accept a novel interpretation of the law of this Commonwealth associated with informed consent. Plaintiff argues that the instant situation is distinguishable from those Pennsylvania cases holding informed consent to sound in other than negligence in that this case, unlike those heretofore before the courts, involves a doctor who allegedly admitted not only to a failure to inform his patient with regard to certain possible risks, *but to having been ignorant of the fact that such risks existed.* The failure to inform a patient under these circumstances, contends plaintiff, does create a cause of action sounding in negligence.

---

3. Plaintiff does not, however, concede that it may not, under any circumstances, amend its complaint. See infra.

Alternatively, plaintiff suggests that informed consent, even if a cause apart from negligence, should be recognized at trial because it is so implicit in the allegations in the complaint.

In support of its contentions, plaintiff urges that the September 10, 1973, order of Judge Takiff was tantamount to a recognition by that court that the issue of informed consent was at least implicitly raised in its complaint.

To permit plaintiff to submit the theory of informed consent *would require* at this late stage in the proceedings an amendment of its complaint to include a new and different cause of action. While certain jurisdictions have held that a cause of action against a physician for lack of informed consent sounds in negligence rather than in battery or other intentional tort,[4] Pennsylvania has not.

The law is clear in this Commonwealth that a theory of liability premised upon an alleged failure to secure a plaintiff's informed consent is not one of negligence, but one of either a technical assault and/or a battery: Gray v. Grunnagle, 423 Pa. 144, 223 A. 2d 663 (1966); Sauro v. Shea, 257 Pa. Superior Ct. 87, 390 A. 2d 259 (1978); Cooper v. Roberts, 220 Pa. Superior Ct. 260, 286 A. 2d 647 (1971), allocatur ref'd. See also Dunham v. Wright, 423 F. 2d 940 (3d Cir. 1970). It is equally clear that the allegations set forth in the instant complaint against Dr. Atkins are limited to claims sounding in

---

4. See, for example, Missouri, Mitchell v. Robinson, 334 S.W. 2d 11 (1960); Kansas, Natanson v. Kline, 186 Kan. 393, 350 P. 2d 1093 (1960); Delaware, DiFilippo v. Preston, 53 Del. 539, 173 A. 2d 333 (1961); Texas, Wilson v. Scott, 412 S.W. 2d 299 (1967); and California, Salgo v. Leland Stanford Jr. University Board of Trustees, 154 Cal. App. 2d 560, 317 P. 2d 170 (1957); Malpractice-Amendment of Complaint, 70 A.L.R. 3d 82.

negligence (paragraph 10), and perhaps in breach of warranty (paragraph 7). There is no language in the complaint referring either directly or indirectly to an assault or to a battery. Nor is there any language otherwise indicative of an informed consent claim.

It is further clear that an amendment introducing a new cause of action into a complaint in trespass will not be permitted after the statute of limitations has run: Wilson v. Howard Johnson Restaurant, 421 Pa. 455, 219 A. 2d 676 (1966). The "introduction of a new cause of action" has been associated with, in such cases, the adoption by a plaintiff of a new theory of liability. See Manning v. Andy, 51 D. & C. 2d 324 (1970), affirmed 218 Pa. Superior Ct. 902, 279 A. 2d 267 (1971). This rule has been applied to prohibit an amendment in medical malpractice actions. In McCormick v. Grunnagle, 42 D. & C. 2d 464 (1967), a court of common pleas in Pennsylvania specifically denied a plaintiff's petition to amend a complaint, which had alleged only negligence, to include an allegation based upon the doctrine of informed consent. The court so acted on the ground that such an amendment would introduce a new cause of action long after the expiration of the statute of limitations.[5]

This court is of the opinion that the McCormick holding is directly applicable to the instant situation. The Isard complaint was filed in June of 1969

5. See also, the reasoning set forth in Keenan v. Yale New Haven Hospital, 167 Conn. 284, 355 A. 2d 253 (1974), wherein the Supreme Court of Connecticut held that an amendment of a complaint to allege an assault and battery arising out of an operation performed without consent did not relate back to the date of complaint which alleged only negligence, and that an amendment filed after the statute of limitations had run was barred.

to cover a cause of action in negligence which arose in September 1967. The statute of limitations in effect with regard to an assault or battery at the time of the occurrence was one year: Smith v. Yohe, 412 Pa. 94, 194 A. 2d 167 (1963). For the above-noted reasons, plaintiff cannot, therefore, be permitted to amend its complaint after a lapse of some ten years to include a new cause of action based upon a lack of informed consent.

It should be noted that this court cannot agree with the attempt by plaintiff to carve out an exception to the general law regarding informed consent. Plaintiff's theory is that a failure by the doctor to have possessed knowledge of the appropriate risks would remove the doctrine from intentional tort and create a cause of action akin to negligent informed consent. This theory is without merit.[6] A failure by a surgeon to maintain sufficient familiarity with the risks prevalent in his specialty could affect his degree of competency and thereby relate to a failure to meet the standard of care required.

---

6. Even if this court were to accept plaintiff's argument that informed consent could sound in negligence, we would be unable to permit introduction of the issue at trial upon the basis of the allegations pleaded. It is axiomatic under Pennsylvania rules of procedure that a complaint in trespass must be sufficiently specific to put defendant on notice of the claims and facts upon which a plaintiff is relying: Pa.R.C.P. 1019(a), (f). See generally 2 Goodrich-Amram 2d §1044(a):1.2. In essence, plaintiff must plead facts to establish the duty that defendant owed to plaintiff and the breach of that duty: Otto v. American Mutual Insurance Co., 241 Pa. Superior Ct. 423, 361 A. 2d 815 (1976). It has been held that the kind of bald assertion of negligence without facts to support it (such as "being otherwise negligent at law or in fact") upon which plaintiff here relies, is insufficient: Gross v. United Engineers and Constructors, 224 Pa. Superior Ct. 233, 302 A. 2d 370 (1973); Johnson v. Ind. Explosives Co., 43 Luz. 81 (1952).

This is not to say, however, that the nature of an action premised upon a battery, or unlawful touching, would be transformed thereby into one based upon negligence. An informed consent action is premised upon a failure by the physician not merely to *know* of the risks involved, but a failure to *communicate* those risks to his patient. It is this failure to communicate that distinguishes the causes of action.

It is furthermore clear that plaintiff, while in theory resting upon negligence, in actuality desires to travel beyond that point. The ultimate objective of plaintiff is to have presented, by argument and charge to the jury, the language of informed consent. Such language has, however, been restricted by the law of this Commonwealth to actions sounding, not in negligence, but in intentional tort (see above).

This court cannot accept plaintiff's alternative contention that informed consent should be recognized at trial in that it was implicit in the complaint. The case cited by plaintiff, Kuisis v. Baldwin-Lima-Hamilton Corp., 457 Pa. 321, 325, 319 A. 2d 914 (1974), is not supportive of that theory. In Kuisis, the Supreme Court of Pennsylvania sustained a ruling by the trial court permitting the amendment of a complaint alleging only negligence to include an allegation under Restatement, 2d, Torts, §402A, after the statute of limitations had run. That court based its opinion on the fact that plaintiff's claim under section 402A "was clearly implicit in his allegations of negligence in the design and manufacture of the crane." The Kuisis case turned on the court's finding that the original complaint *did comprise the "material facts"* on which his section 402A claim was based and that an amendment would introduce no new

theory of causality or breach of duty by defendant. In the action now before this court this is simply not the case. In Kuisis the specific allegations with regard to negligence in the original complaint (defect, unreasonably dangerous, failure to warn) were equally applicable to products liability. In the instant situation, on the other hand, there were *no specific allegations* in the original complaint which dealt with any essential ingredient of an action based upon the failure to obtain plaintiff's informed consent.[7]

Finally, this court cannot agree with plaintiff's argument that the order of the Honorable Harry A. Takiff of this court would support its contentions. While the precise intent and the extent of that order cannot now be ascertained, it is clear, at any rate, that the law in Pennsylvania will not permit, by way of answers to interrogatories or depositions, an unofficial amendment of a complaint: Laursen v. General Hospital of Monroe County, _____ Pa. Superior Ct. _____, 393 A. 2d 761 (1978); Gross v. United Engineers and Constructors, supra.

It is the opinion of this court that plaintiff may not introduce at trial the theory of informed consent.[8]

---

7. Regarding the requisite specificity with which facts must be alleged in a complaint, see footnote 6, page 22, supra.

8. As to the ancillary question raised in conference, this court does note that under the new Rules of Discovery, Pa.R.C.P. 4020(a)(3)(a): "The deposition of a witness, whether or not a party, may be used by any party for any purpose if the Court finds (a) that the witness is dead." It would appear that under the said rule, plaintiff can introduce into evidence at trial the entire deposition of Dr. Atkins. Any argument based upon such evidence would, of course, be subject to the confines of this opinion.