**The Village at Camelback Property Owners Association Inc. v. Carr**

*Mark P. Pazuhanich,* for plaintiff.
*Brenda Wise Goodman,* for defendant Carr.
*Lee C. Krause,* for defendant Camelback.
*John Rogers Carroll,* for defendant Frank Enterprise Chateau Assoc. & Side II Assoc.

O'BRIEN, *J.,* October 5, 1986 —Plaintiff, an association of property owners, has filed a 12-count complaint sounding in contract, tort and equity against a developer and six separate legal entities in which he is a participant. The complaint was filed on June 11, 1986, and on July 1, 1986, the individual defendant and three of defendant legal entities filed preliminary objections. On July 22, 1986, the remaining three defendants filed preliminary objections. On July 28, 1986, plaintiff filed preliminary objections to the preliminary objections of the three defendants on the ground of untimeliness. On August 15, 1986, pursuant to order of court, all defendants filed amended preliminary objections covering the whole spectrum of grounds authorized by Pa.R.C.P. 1017(b). Following briefs and argument, all preliminary objections are now before the court for disposition.

Plaintiff's preliminary objections to the preliminary objections filed by certain defendants are premised on the failure of those defendants to comply with Pa.R.C.P. 1026 which provides in pertinent part as follows:

"(a) Except as provided by subdivision (b), every

pleading subsequent to the complaint shall be filed *within 20 days after service of the preceeding pleading,* but that pleading need not be filed unless the preceeding pleading contains a notice to defend or is endorsed with a notice to plead." (emphasis added).

Plaintiff argues that since his complaint was filed on June 11, 1986, the preliminary objections of certain defendants which were not filed until July 22, 1986, were untimely and should be dismissed. A careful review of the prothonotary's file and the prothonotary's docket fails to disclose any evidence as to when the complaint, which was filed on June 11, 1986, was served upon defendants. Plaintiff having failed to document time of service of the complaint, the preliminary objections alleging untimely compliance with Pa.R.C.P. 1026 must be dismissed.

Defendants' preliminary objections allege, inter alia, that plaintiff has failed to comply with Pa.R.C.P. 1019 in that the allegations of the complaint are not specific and that required documents are not attached to the pleading. The comprehensive complaint filed by plaintiff consists of 44 pages, containing 142 separately numbered paragraphs attaching 16 exhibits. Pleadings serve the function of defining issues and giving notice to the opposing party of what the pleader intends to prove at trial. *Laursen v. General Hospital of Monroe County,* 259 Pa. Super. 150, 393 A.2d 761 (1978). The complaint is sufficiently specific if it provides the adverse party with enough facts to enable him to frame a proper answer and prepare a defense. *Com. Ex. Rel. Milk Marketing Board v. Sunnybrook Dairies Inc.,* 29 Pa. Commw. 210, 370 A.2d 765 (1977). The complaint filed by plaintiff is sufficiently comprehensive to put defendants on notice of plaintiff's claims and enable

defendants to file an answer. Further, it should be noted that defendants have filed demurrers to the complaint. As noted by the Superior Court in *Speck v. Feingold,* 268 Pa. Super. 342, 408 A.2d 496 (1979), it is inconsistent for a party to both demur to a pleading and at the same time move for a more specific pleading. If a party can demur, then by definition the pleading is specific enough for the party to understand the allegations contained therein. Otherwise how would the moving party know what cause of action or defense is stated. In this context, it is for the objecting party to seek evidential details rather than clarification. Discovery is available to such a party. See Pa.R.C.P. 4001 et seq. Therefore, the preliminary objections of defendants alleging noncompliance with Pa.R.C.P. 1019 are without merit.

Defendants next challenge the standing of plaintiff association alleging that individual purchasers of property from defendants must each be joined as a necessary party. A requirement that each aggreived property-owner member of plaintiff association be joined as a separate party would only tend to encumber the record of this proceeding and compound its complexity to the detriment of counsel and the parties. In view of the comprehensive complaint filed by plaintiff, we are satisfied that plaintiff association meets the criteria set forth in *1,000 Grandview Association Inc. v. Mount Washington Associates,* 290 Pa. Super. 365, 434 A.2d 796 (1981) and *Indian Mountain Lakes Civil Association v. Coyle,* 283 Pa. Super. 545, 424 A.2d 943 (1981) as a proper party plaintiff.

While the preliminary objections discussed above do not have merit, there are several issues raised by defendants in their pleadings which require in depth consideration. The fast pace of development

of the Pocono Mountain Area of Monroe County in recent decades has produced many disputes between developers and property owners. Many of these disputes have found their way into this court and have taken many different forms. Counsel for plaintiff must be commended for his imaginative drafting of the instant complaint in that he has alleged every conceivable basis upon which he might obtain a recovery for his clients against defendants. However, while we may commend the ingenuity of counsel, we cannot permit a dramatic deviation from long standing legal principles governing the resolution of such disputes. There are three areas in which plaintiff's complaint is contrary to statutory provisions or precedent of case law in this commonwealth. These areas are the attempt by plaintiff to join a prayer for equitable relief (count III and count XI) with prayers for breach of existing agreements in the same complaint; the attempt to invoke the jurisdiction of this court for alleged violations of 18 U.S.C. § 1961 et seq.; and attempts to impose personal liability by piercing the corporation veil of defendants.

In evaluating defendants' demurrers to plaintiff's complaint, we must evaluate the complaint and exhibits attached thereto on its face. Where there is an inconsistency between the allegations in the complaint and the exhibits attached, the exhibits prevail. *Elliott-Rowland Corp. v. Arcway Realty Co. Inc.*, 180 Pa. Super. 99, 117 A.2d 808 (1955). This is a fundamental principle of pleading and has long been adhered to by the Pennsylvania courts. *Schulkill Products v. H. Rupert and Sons Inc.*, 305 Pa. Super. 36, 451 A.2d 229 (1982). Further, a demurrer does not admit the truth of averments in the complaint which conflict with the exhibits. *Framlau Corp. v. Delaware County*, 223 Pa. Super.

272, 299 A.2d 335 (1972). All of the exhibits attached to the complaint are declarations, revisions, bylaws, or contracts, involving defendant Camelback Associates Inc., plaintiff Property Owner's Association Inc. and Frank Enterprises Inc. Many of the counts of the instant complaint are predicated upon the breach of certain provisions of those documents or representations and warranties thereto connected.

It has been a long standing rule in Pennsylvania jurisprudence that plaintiff may not seek equitable relief where there is an adequate remedy at law. *Clark v. Pennsylvania State Police*, 496 Pa. 310, 436 A.2d 1383 (1981). More specifically, in regard to count III seeking unjust enrichment, our Superior Court has held in *Birch Wood Lakes Community Association v. Comis,* 296 Pa. Super. 77, 442 A.2d 304 (1982) that this form of equitable relief is not available where the relationship among the parties is predicated on written documents or agreements. Further, the claim of equitable relief in count XI of the complaint is inconsistent to claims of the other counts sounding in contract and tort and cannot be considered by this court. Therefore, the demurrers of all defendants to counts III and XI must be sustained.

53 Temple Law Quarterly 1009 et. seq. contains a comprehensive analysis of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, including both the criminal and civil remedies afforded by said act. Clearly the provisions of this act are not relevant in any way to the instant dispute between plaintiff Property Owner's Association and defendant developer. However, the substantive issue need not be discussed further since defendants have raised a jurisdictional issue which is dispositive of count X of the complaint.

The specific issue raised by defendants' preliminary objection is whether state courts have concurrent jurisdiction with federal courts in the adjudication of private civil actions pursuant to 18 U.S.C. §1964(c). Section 1964(c) of the RICO statute provides the following civil remedy.

"Any person injured in his business or property by reason of a violation of 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit including a reasonable attorney's fee."

The Supreme Court in *Gulf Offshore Co. v. Mobile Oil Corp.*, 453 U.S. 473, 478, 101 S.Ct. 2870, 2875, 69 L.Ed. 2d 784 (1981) has articulated the following standard for determining whether a claim created by federal law can be brought in state court:

"In considering the propriety of state court jurisdiction over any particular federal claim, the court begins with the presumption that state courts enjoy concurrent jurisdiction. Congress, however, may confine jurisdiction to the federal courts either explicitly or implicitly. Thus, the presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history or by a clear incompatibility between state court jurisdiction and federal interest."

A determination of congressional intent with regard to state court jurisdiction over a federal claim thus requires an examination of the language, structure, legislative history, and underlying policies of the federal legislation. *Gulf Offshore Co.*, supra. At the outset, we note that RICO has no provision explicitly confining jurisdiction to the federal court. Resolution of the issue before us will there-

gress implicitly restricted jurisdiction of RICO to the federal courts.

In *County of Cook v. Midcon Corp.*, 574 F.Supp. 902 (N.D. Ill., 1983), the court noted that 18 U.S.C. §1964(c) was drawn almost verbatim from section 4 of the Clayton Act, 15 U.S.C. §15, the statute conferring jurisdiction over federal antitrust laws. After observing that it has long been recognized that 15 U.S.C. §15 gives federal courts exclusive jurisdiction over federal antitrust laws and citing numerous cases to support that principle, the court stated:

"Moreover it is well established that the identity in language between 18 U.S.C. §1964(c) and 15 U.S.C. §15 is not a mere happenstance; Congress consciously patterned the RICO section after the antitrust prototype. See e.g., 115 Cong. Rec. 6992, 6993 (1969) (statement of Sen. Hruska). Legislators must have known the courts have construed virtually identical language as giving federal courts exclusive jurisdiction over antitrust claims. It would be anomalous for this court to hold that the jurisdictional grant in the RICO statute did anything other than create exclusive federal jurisdiction over civil claims by persons injured by violations of 18 U.S.C. §1962."

Since it is an accepted principle of statutory construction that the Legislature has constructive knowledge of judicial interpretations of existing statutes when drafting new legislation, Congress' adoption of a jurisdictional provision in RICO which is nearly identical to a provision of the Clayton Act which had been interpreted to confer exclusive jursidiction on the federal courts weighs heavily in favor of exclusive jurisdiction over RICO claims. See *Levinson v. American Accident Reinsurance Group*, 503 A.2d 632 (Del. Ch., 1985).

Factors that favor exclusive federal court jurisdiction over federal claims include: (1) the desirability of uniform interpretation of federal law, (2) the expertise of federal judges in federal matters, and (3) the greater hospitality of federal courts to federal claims. *Gulf Offshore Co.,* supra. In *Greenview Trading Co. Inc. v. Hershman & Leisher P.C.,* 108 A.D. 2d 468, 489 N.Y.S. 2d 502 (1985), a New York appellate court, touching on the uniformity and expertise factors stated above, suggested the following rationale for the exclusive jurisdiction of the federal courts in RICO claims.

"What quickly emerges from a study of the statute is that the adjudication of civil RICO claims involves not just the interpretation of a single federal statute, however complicated, but rather the interpretation and application of a number of federal statutes that constitute predicate offenses, statutes with which the federal courts are obviously far more familiar from ongoing experience than state courts. Indeed, federal RICO litigation has resulted in significant and pervasive disagreements among the federal district and circuit courts as to the correct interpretation and application of one or another as part of the statute. State jurisdiction over civil RICO claims would inevitably involve state courts in resolving issues which have divided and continue to divide, federal district and circuit courts."

Furthermore, exclusive jurisdiction is particularly appropriate when we consider RICO's broad purpose of eliminating organized crime throughout the United States. Congress could not have intended the untoward result of creating a wholly new cause of action triable in state courts across the country, while at the same time mandating that federal substantive law governs such actions, and at the same time reserving exclusively to the federal govern-

ment the procedural power necessary to implement the underlying objective. *Kinsey v. Nestor Exploration Ltd.,* 604 F.Supp. 1365, 1371 (E.D. Wash., 1985). In addition, the growing number of state legislatures adopting their own "state RICO" statutes is further evidence of the recognized incompatibility between state court jurisdiction and federal interest under the RICO Act. Id. at 1370.

Finally, we note that although the jurisdictional issue presented to us has been adjudicated by a very limited number of states, we are aware of at least four states (New York, New Jersey, Delaware and Texas) who have found RICO to be within the domain of exclusive federal jurisdiction. See *Greenview Trading Co. Inc. v. Herman & Leicher, P.C.,* supra; *Maplewood Bank and Trust Company v. Acorn Inc.,* 207 N.J. Super. 590, 504 A.2d 821 (1985); *Levinson v. American Accident Reinsurance Group,* supra; and *Main Rusk Associates v. Interior Space Constructors Inc.,* 699 S.W.2d 305 (1st Tex. Ct. App., 1985). Based upon the foregoing reasonings, we hold that this court does not have subject matter jurisdiction of count X of the complaint.

The one individual defendant in this proceeding indentified by plaintiff as the primary officer, director, shareholder and promoter of defendant corporations, has filed a demurrer to all counts of the complaint in which he is named. The issue presented is whether plaintiff can pierce the corporate veil so as to impose personal liability on the individual defendant. The corporation as a separate and distinct entity from its shareholders, officers or directors has long been firmly established in common law jurisdictions. The East India Company was chartered by Elizabeth I of England and several English corporations undertook the colonization of the New World,

the most notable of which was the Hudson Bay Company. The concept of a corporation as a means of pooling private resources and entrepreneurial development with limited risks to the investor was a principal factor in the industrial revolution. By the dawn of the 20th century, every jurisdiction in the United States had recognized the corporate entity by constitutional or statutory provisions. Underlying the rapid spread of the corporate business form in the 20th century has been the understanding that there is a limitation or insulation from liability on the part of the shareholder, officer and director of such an enterprise. The purpose behind such limitation has been to encourage creation of industry and business activity together with the jobs such activities make available to our citizens with the protection that the only risk to the investor or entrepreneur is the extent of their capital investment or personal effort. Presently, the law of Pennsylvania allows liability to be imposed on such shareholders, officers and directors only in limited circumstances specifically authorized by statute. (15 P.S. 1609; 15 P.S. 3136).

In addition to the constitutional and statutory provisions dealing with corporations, our courts have long recognized the distinct legal status of corporate entities. See *Dartmouth College v. Woodward,* 4 Wheat. 518 (1819). A review of these historic authorities leads to the conclusion that an attempt by a plaintiff to pierce the corporate veil and impose individual liability on an officer, director or shareholder of a corporation must be carefully scrutinized. This is particularly true in a case such as the case at bar where all of the exhibits attached to plaintiff's complaint setting forth various written instruments creating rights and liabilities in the parties of this litigation, contain no reference to any individual

undertaking for personal responsibility. In its complaint, plaintiff asserts that many of the representations and alleged warranties were made by the individual defendant to induce members of plaintiff association to purchase the respective residential units. It is true that corporations must operate through individuals and it can be said of every residential development in the Poconos which has passsed through this court that there was one primary promoter for every such organization. In every newspaper, magazine and on every television station, we hear Lee Iaccoca promoting the virtues of the automobiles manufactured by Chrysler Corporation. However, we do not know of any court in any jurisdiction in the United States which has imposed liability on Lee Iaccoca individually when a Chrysler automobile sold to a member of the public turned out to be a lemon. Plaintiff has not presented any cogent reasons why the individual defendant in this proceeding should be treated any differently.

The accepted rule in Pennsylvania is that a corporation is an entity distinct from its shareholders even if the stock is held entirely by one person. *Barium Steel Corp. v. Wiley*, 379 Pa. 38, 108 A.2d 336 (1954). There appears to be no clear test or well settled rule either in Pennsylvania or in the country at large as to exactly when the corporate veil may be pierced and when it may not be pierced. All of the authorities cited by plaintiff in support of its plea to pierce the corporate veil, involve equity actions which are not predicated upon express agreements or declarations of record. We hold that where the relationship between parties to litigation is premised on written documents clearly giving notice of a party's corporate status, an action for breach of those agreements cannot impose individual liability on an

·officer, director or shareholder of such corporate party.

## ORDER

And now, this October 6, 1986, it is ordered as follows:

(1) The demurrer of individual defendant Frank P. Carr III to all counts of the complaint is sustained.

(2) The demurrer of all defendants to count III alleging unjust enrichment and count XI seeking equitable relief are sustained.

(3) Count X of the complaint is dismissed for lack of jurisdiction.

(4) All other preliminary objections of all defendants are denied.

(5) All remaining defendants are allowed 20 days within which to file an answer.

## ORDER

And now, this March 23, 1987, the motion to quash appeal is granted only insofar as the appeal is taken from the dismissal of counts III and XI.